STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0639

ANDREA BALLINGER, MATTHEW HELM,
AND SUSAN FLANAGIN

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND MECHANICAL COLLEGE,
F. KING ALEXANDER, PRESIDENT OF LOUISIANA STATE
UNIVERSITY, AND DANIEL LAYZELL, EXECUTIVE VICE
PRESIDENT FOR FINANCE AND ADMINISTRATION OF
LOUISIANA STATE UNIVERSITY

Judgment Rendered: _____FEB 1 8 2025_____

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
Trial Court No. 682,549

The Honorable Max N. Tobias, Jr., Judge Presiding

* * * * *

Larry S. Bankston
Jenna H. Linn
Baton Rouge, Louisiana

Attorneys for Plaintiffs-Appellants,
Andrea Ballinger, Matthew Helm,
and Susan Flanagin

Liz Murrill
Attorney General
Andrew Blanchfield
Collin J. LeBlanc
Spec. Asst. Attorneys General
Baton Rouge, Louisiana

Attorneys for Defendants-Appellees,
Board of Supervisors of Louisiana
State University and Agricultural and
Mechanical College, F. King Alexander,
and Daniel Layzell

* * * * *

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

**WOLFE, J.**

The issue in this appeal is whether the trial court erred in granting the defendants' motion for summary judgment and dismissing all of the plaintiffs' claims for damages after finding that the plaintiffs were unclassified at-will employees with no recourse against the defendants. After a thorough *de novo* review, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL BACKGROUND

In 2017, three individuals, Andrea Ballinger, Matthew Helm, and Susan Flanagin (collectively, "the plaintiffs"), were hired as unclassified state employees to provide informational technology ("IT") services and expertise to Louisiana State University and Agricultural and Mechanical College ("LSU"), and to facilitate transformation of LSU's "antiquated and deteriorating IT system[.]" Ms. Ballinger was hired as the Chief Technology Officer, with an annual salary of $260,000.00. Mr. Helm was hired as the Executive Director of Data Architecture, and later promoted to Assistant Vice President and Chief Data Officer, with an annual salary of $175,000.00. Ms. Flanagin was hired as the Student Systems Implementation Manager, with an annual salary of $135,000.00. Each of the plaintiffs relocated from their respective homes in Illinois while their families remained domiciled in Illinois. All three of the plaintiffs established residences in Baton Rouge, Louisiana, and paid Louisiana income taxes on their salaries.

A Louisiana law enacted in 2013, La. R.S. 42:31, required each of the plaintiffs to have a Louisiana driver's license and to register their vehicles in Louisiana, because each of the plaintiffs were highly paid unclassified employees with annual salaries over $100,000.00.[1] LSU did not include or communicate the

---

[1] Louisiana Revised Statutes 42:31, entitled "Eligibility requirements for certain unclassified employees," provides as follows:

> A. Notwithstanding any other law to the contrary, any person hired or employed in an unclassified position as defined by the State Civil Service Commission,

requirements of La. R.S. 42:31 when recruiting and hiring each of the plaintiffs. LSU received an anonymous complaint in January 2019 that Ms. Ballinger was not in compliance with La. R.S. 42:31. After investigating further, LSU learned that Mr. Helm and Ms. Flanagin were likewise not in compliance with the statute. LSU responded by instructing each of the plaintiffs that they would need to comply with the licensing and registration requirements of the statute within thirty days. In reply, each of the plaintiffs advised LSU that they would not be able to lawfully comply since all of the plaintiffs' families remained domiciled in Illinois along with vehicles that were registered in their names in Illinois.

Following the plaintiffs' refusal to comply with the statute, LSU requested that each plaintiff submit resignation letters effective March 31, 2019. LSU then offered each plaintiff continued employment under a Wages as Earned ("WAE") hourly work arrangement to begin on April 1, 2019. Each plaintiff's WAE offer was contained in an emailed letter dated March 8, 2019, advising that WAE employees are "[p]aid by the hour and only for hours worked[;]" and specifically stating that WAE employees are "[e]mployed at-will and either Employee or Employer may terminate employment at any time and for any reason." Also contained in each WAE

---

and whose annual salary or rate of compensation is equal to, or exceeds one hundred thousand dollars, shall, within thirty days of being hired or employed at such salary, provide proof to his public employer that he has been issued a Louisiana driver's license and that all vehicles registered in his name are registered in Louisiana. This requirement shall be deemed a qualification for the position for which the person was employed or hired, and for the duration of the person's employment in the event the person's salary is increased and the requirements of this Section are triggered.

B. All government agencies which hire or employ any person in an unclassified position as defined by the State Civil Service Commission, whose annual salary or rate of compensation is equal to, or exceeds one hundred thousand dollars, shall verify that such person has been issued a Louisiana driver's license and that all vehicles registered in his name are registered in Louisiana. The public employer shall verify the employee meets this requirement for the duration of this person's employment.

C. Any person hired or employed in an unclassified position who does not meet the requirements of this Section, or who no longer meets the requirements of this Section, shall be removed and terminated within thirty days of the public employer learning such person does not meet the requirements of this Section.

3

letter was a statement that the offer was "[s]ubject to the limitations of La. R.S. 42:31 with wage calculation beginning on April 1, 2019[,]" with a different ending date for each of the plaintiffs.[2] The WAE offers were an attempt by LSU to keep the plaintiffs employed "as needed" with each of the plaintiffs reaching the $100,000.00 income threshold by the ending date stated in their respective WAE offers. In that way, each of the plaintiffs could remain employed at LSU without needing to meet the requirements of La. R.S. 42:31. Each of the plaintiffs accepted their respective WAE offers; however, before the offers took effect, LSU withdrew them after several news articles were published regarding the matter.

The plaintiffs, through counsel, sent written demands that LSU comply with the terms of their individual WAE offers on March 20, 2019. LSU refused, taking the position that the plaintiffs were at-will employees who could be terminated at any time, for any reason. As a result, the plaintiffs joined together and filed this lawsuit for damages against LSU through its Board of Supervisors, LSU's President and Chancellor at the time, F. King Alexander, and LSU's former Executive Vice President and Chief Financial Officer, Daniel Layzell, who was involved with the hiring and terminating decisions regarding the plaintiffs. In their petition, the plaintiffs assert causes of action for negligence, misrepresentation/detrimental reliance, breach of contract, and fraud in the inducement.

On March 24, 2023, the defendants (collectively referred to as "LSU") moved for summary judgment on the grounds that all three of the plaintiffs were at-will employees with no recourse against LSU.[3] In support of its motion for summary judgment, LSU submitted: (1) the affidavit of a representative from LSU's Human

---

[2] Ms. Ballinger was extended a WAE offer from April 1, 2019, through August 16, 2019. Mr. Helm's WAE offer was from April 1, 2019, through September 27, 2019, and Ms. Flanagin's WAE offer was from April 1, 2019, through November 22, 2019.

[3] LSU moved for summary judgment on two prior occasions, but both times the motion was denied to allow for more discovery as requested by the plaintiffs.

Resources Department, along with the plaintiffs' original offers of employment, the plaintiffs' resignations, and LSU's letters offering the plaintiffs continued employment as WAE employees; (2) a copy of La. R.S. 42:31; (3) the petition and answer; and (4) the depositions of Mr. Layzell, Ms. Flanagin, Mr. Helm, Ms. Ballinger, Mr. Alexander, and the Executive Director to LSU's Board of Supervisors, Jason Droddy.

The plaintiffs opposed LSU's motion for summary judgment, primarily arguing that genuine issues of material fact remained concerning the withdrawal of the WAE offers of employment. The plaintiffs maintained that LSU breached their WAE employment contracts with fixed terms of limited durations, causing them to sustain damages. Thus, the plaintiffs argued that their "at-will" employment status was disputed. Additionally, the plaintiffs asserted that LSU breached its duty to provide accurate information in the hiring process and that breach caused them damages. Finally, the plaintiffs argued that they each justifiably relied on LSU's representations that they met the qualifications for the positions offered to them, and in reliance of the representations, the plaintiffs resigned from their jobs in Illinois and moved to Louisiana. When their employment offers were revoked by LSU, the plaintiffs incurred damages. In support of their opposition, the plaintiffs submitted: (1) the deposition testimony of Mr. Layzell and Mr. Alexander; (2) responses to interrogatories and requests for admissions by Mr. Alexander, Mr. Layzell, and LSU; and the WAE offers and affidavits of each of the plaintiffs.

After a hearing, the trial court granted LSU's motion for summary judgment and dismissed all of the plaintiffs' claims against LSU in a judgment signed on June 27, 2023. The trial court found that the plaintiffs were clearly at-will employees who could be dismissed at any time for any reason. The plaintiffs appeal, assigning error to the trial court's determination that they were at-will employees with no recourse against LSU.

5

## SUMMARY JUDGMENT[4]

After an opportunity for adequate discovery, a motion for summary judgment shall be granted only if the motion, memorandum, and supporting documents admitted for purposes of the motion for summary judgment show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). On appeal, appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Knox v. American National Insurance Company**, 2023-0758 (La. App. 1st Cir. 5/9/24) (unpublished), 2024 WL 2097177, * 1. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. A genuine issue is one as to which reasonable persons could disagree. **Id**. at *2. Further, simply showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. **Sketchler v. Hernandez**, 2020-0292 (La. App. 1st Cir. 5/19/21), 326 So.3d 912, 916 n.3. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Knox**, 2024 WL 2097177 at *2.

## LAW AND ANALYSIS

The employer-employee relationship is a contractual relationship. **Amer v. Roberts**, 2015-0599 (La. App. 1st Cir. 11/9/15), 184 So.3d 123, 131. Louisiana law provides that employment contracts are either limited term or terminable at-will. **Id**. at 132. Under a limited term contract the parties agree to be bound for a certain

---

[4] Louisiana Code of Civil Procedure article 966 was amended by 2023 La. Acts No. 317, §1 (effective August 1, 2023), and 2023 La. Acts No. 368, § 1 (effective August 1, 2023). However, in this case we must apply the prior version of La. Code Civ. P. art. 966 that was in effect on March 24, 2023, when LSU filed its motion for summary judgment.

period, during which the employee is not free to depart without assigning cause, nor is the employer at liberty to dismiss the employee without cause. **Id**. When a contract does not provide for a limited term or is for an indefinite term, the contract is terminable at the will of either party. See La. Civ. Code art. 2747; **Medwick v. MADCON Corporation**, 2021-1620 (La. App. 1st Cir. 8/8/22), 348 So.3d 106, 112, writ denied, 2022-01352 (La. 11/16/22), 349 So.3d 991. See also **May v. Harris Management Corp.**, 2004-2657 (La. App. 1st Cir. 12/22/05), 928 So.2d 140, 146. Under Louisiana's employment-at-will doctrine, both employers and employees are free to terminate the employment relationship at any time, and for any reason, without liability, provided that the termination violates no statutory or constitutional provision and, obviously, that there is no contract of employment for a definite term. See **Blakemore v. Town of Grambling**, 53,135 (La. App. 2d Cir. 1/15/20), 289 So.3d 681, 687 and 689. See also **Mix v. University of New Orleans**, 609 So.2d 958, 960-961 (La. App. 4th Cir. 1992), writ denied, 612 So.2d 83 (La. 1993).

Employment at-will may apply to any employee who is not protected by civil service provisions, as well as to private industry employees. See **Blakemore**, 289 So.3d at 687. The reasons for termination need not be accurate, fair, or reasonable under the at-will doctrine; thus, the question of why the employee was terminated is irrelevant and consequently raises no genuine issue of material fact. **Mix**, 609 So.2d at 964. See also **Huang v. Louisiana State Bd. of Trustees for State Colleges and Universities**, 99-2805 (La. App. 1st Cir. 12/22/00), 781 So.2d 1, 11. Employment is presumed to be at-will unless a plaintiff alleges sufficient facts to establish the existence of an employment agreement or contract. Therefore, the at-will presumption may be altered by contract. See **Mix**, 609 So.3d at 963. The parties seeking damages under an alleged contract of employment for a limited term bear the burden of proving there was a meeting of the minds on the term of employment. **Medwick**, 348 So.3d at 113.

7

In this case, the plaintiffs are not civil service employees. They allege, however, that their WAE offers by LSU were employment contracts for a specific period of time. Moreover, all of the plaintiffs' claims against LSU for negligence, misrepresentation/detrimental reliance, and fraud in the inducement arise out of an alleged breach of contract. The resolution of the plaintiffs' arguments involves an interpretation of the WAE offers as contracts, which have the effect of law between the parties. See La. Civ. Code art. 1983; **Amer**, 184 So.3d at 131. The responsibility of the judiciary in interpreting contracts is to determine the common intent of the parties. See La. Civ. Code art. 2045; **Amer**, 184 So.3d at 131. Courts begin their analysis of the parties' common intent by examining the words of the contract itself. **Amer**, 184 So.3d at 131. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046.

While each of the plaintiffs' WAE offers contained a starting and ending date, each offer could be terminated at any time in accordance with the following provisions that appeared in all three WAE offers:

> The following apply to WAE employees:
> \*\*\*
> **Employed at-will and either Employee or Employer may terminate employment at any time and for any reason.**
> \*\*\*
> **Subject to the limitations of La. R.S. 42:31** with wage calculation beginning on April 1, 2019.
> (Emphasis added.)

The clear language of each contract reveals that the WAE contracts were offers of at-will employment. Either LSU or the plaintiffs could terminate the plaintiffs' at-will employment at any time, for any reason. Furthermore, the dates provided in each WAE contract essentially served as a limitation on wages, as the wages earned could not cause any of the plaintiffs to earn more than the $100,000.00 annual threshold provided in La. R.S. 42:31, which would result in a violation of that

statute.[5] Based upon our *de novo* review of the record, we find the trial court did not err in granting summary judgment dismissing all of the plaintiffs' claims against LSU, because the plaintiffs cannot prove a breach of contract that gave rise to all of their causes of action including negligence, fraud in the inducement, misrepresentation, and detrimental reliance.[6] All that LSU needed to show was that the plaintiffs were at-will employees in order to be entitled to summary judgment as a matter of law.

## CONCLUSION

The summary judgment signed by the trial court on June 27, 2023, is affirmed. All costs of this appeal are assessed to the plaintiffs, Andrea Ballinger, Matthew Helm, and Susan Flanagin.

**AFFIRMED.**

.

---

[5] It is well settled that a set rate of pay based on a period of time does not imply an intent to contract for a specified time. See **May**, 928 So.2d at 146, n.2.

[6] Additionally, we note that Louisiana cases have held it to be patently unreasonable as a matter of law for an employee to rely on an offer of at-will employment, even when an employee has resigned from one job to accept the offer. See **May**, 928 So.2d at 147-148.